## UNION STOCK YARDS v. PEELER.
(No. 8266.)

Court of Civil Appeals of Texas. San Antonio.
Oct. 30, 1929.

Rehearing Denied Dec. 4, 1929.

Terrell, Davis, McMillan & Hall, of San Antonio, for appellant.

Randolph L. Carter, of San Antonio, for appellee.

COBBS, J. ██ Appellee sued appellant for damages resulting to him on account of injuries received while he was lawfully in appellant's stockyards. Appellee alleged that on April 13, 1928, while assisting in the handling of some cattle in appellant's stockyards, the latch on one of the gates broke when one of the cattle came in contact with it, and thereby he was thrown, and one of the cattle stepped upon his left leg and broke it. It was alleged that appellant negligently permitted the latch of said gate to be in a defective, insecure, and unsafe condition so that it broke when one of the cattle came in contact with it, and appellant permitted the latch to become old, worn, and weak, and that said acts of negligence directly caused and contributed to the plaintiff's injuries. It was further alleged that the latch on the gate was of insufficient size and strength, and that appellant was negligent in providing and maintaining such a latch.

The defendant demurred generally and specially to the petition. These exceptions were properly overruled, for we think a cause of action was stated.

The defendant answered that the plaintiff was on the premises of the defendant company on private and personal business with one John L. Rothe, a commission merchant operating out of said yards, and did not come on the premises for the purpose of transacting any business with the defendant company; that the plaintiff was not in any way interested in, or connected with, the cattle referred to in his petition, and at the time of said injury he was a volunteer and a licensee as to the defendant, and in going into the stock pens and alleyways he accepted said premises as he found them. Defendant further alleged that its pens, gates, and other facilities are built and maintained in the usual and customary way, and its equipment was of standard character, and that the injury of the plaintiff was caused by the happening of an unexpected and unforeseen contingency, which could not have been foreseen by the exercise of ordinary care or foresight on the part of the defendant, and that accordingly the acts of negligence complained of were not the proximate cause of the injuries to plaintiff. The defendant also charged the plaintiff with contributory negligence in the manner in which he was handling the cattle at the time of the accident, and further alleged that the plaintiff assumed the risk incident to going into the pens and assisting said Rothe with the said cattle.

The exceptions of defendant, general and

special, to plaintiff's pleadings, were properly overruled.

This is essentially a fact case, and, however slight was the evidence, the court has found in favor of the judgment. It was alleged defendant negligently caused and permitted one of the gates and the latch thereof, which defendant maintained in said stockyards, to be in a defective, insecure, and unsafe condition, and by reason thereof the latch broke when one of the cattle came in contact therewith; and defendant was thrown down, causing him to sustain serious injuries. Appellee's leg was broken and injured; the bones in his left ankle and foot were fractured and broken, and his foot and leg were badly bruised and injured; and his entire nervous system sustained a severe shock and injury. He was disabled for many weeks, and said injuries resulted in a partial loss of motion. Said injuries are serious and permanent, and have crippled plaintiff, and his capacity to work and earn money in the future has been diminished by reason thereof. Said injuries caused him to employ physicians and to secure hospital treatment and medicines, and caused him much suffering and pain, and will continue to do so in the future.

Appellant's second proposition states that the court erred in rendering judgment for the plaintiff and in not rendering judgment for defendant, because: (a) The evidence failed to show that the injuries to plaintiff were proximately caused by the negligence of the defendant; (b) the pleadings and evidence show that the alleged negligent acts of the defendant in maintaining the latch was not the proximate cause of plaintiff's injury; (c) the undisputed testimony showed that the injuries of plaintiff were caused by the act of a wild or excited steer, either running into him or brushing against him, breaking the gate and causing him to fall; whereas the judgment must have been based upon a finding that the injury itself, that is, the jumping by the steer upon the plaintiff's leg, resulted from the usual action of cattle when in pens and closed by defective latches, and there is no evidence to this effect; (d) the evidence fails to show that defendant company was guilty of any actionable negligence as to plaintiff, for the reason that the defendant company was under no duty to the plaintiff to keep the latches of its gate in good condition to prevent physical injury to the plaintiff, but was only under the duty of using ordinary care to keep the latches in good condition for the purpose of holding cattle in the pens.

■ There are few questions of law presented for our determination. It is a question of fact to determine here the proximate cause of the injury. Appellee was an invitee. He was requested by Mr. Rothe to assist him in moving cattle from one pen to another. Appellee testified as follows:

"John L. Rothe and I were moving some cattle from one pen to another pen and I was opening and closing the gates and before I got away from the gate at which the accident happened a steer which seemed to be wild and excited brushed up against me, hit the gate and broke the latch, causing the gate to swing open. I had hold of the gate and it jerked me down causing my feet to drag the ground and the steer stepped on my leg and broke it. If the latch on the gate had not broken and the gate had not come open, I would not have been thrown into the prone position. I had already latched it and started up the gate. Before I latched the gate I was just across the alley. I reached back and was holding on to the gate at the time the latch broke and that is what pulled me over. About six inches of the latch in question broke off and the latch itself was an old piece of timber and was worn and loose."

■ We do not deem it necessary for the decision to discuss the testimony at length. It is substantially that appellee was invited to assist Mr. Rothe in moving some cattle from one pen into another. Mr. Rothe was there in his own interest, and lawfully so. Appellee called to see him on some business. He was also a dealer in cattle, and understood the business very well. While there Mr. Rothe invited him in to assist in moving the cattle from one pen to another, and, while assisting, the cattle became frightened and rushed to appellee, who was standing near the gate or at the gate and holding on it. The cattle struck him, knocking him and the gate over, and then stepped on him, injuring him as alleged. It is argued and shown that, had the gate stood up, and it would have had the latch been good and sound, appellee would not have been knocked over and would not have fallen down, and the cattle would not have stepped on him and he would not have been injured. This sounds reasonable, and the finding of the court is sound.

The unexpected occurred here, and, while appellant might not have anticipated such an event, it is remarkable, and we see everyday injuries done and committed in the most surprising way, not contemplated by any one.

■ Clearly, the proximate cause of the injury was the defect in the latch on the gate, and appellee says that, if it had been strong enough to hold the gate, he would not have been thrown down and trampled upon, and would have received no injury. This may be speculation, but the court has so found in rendering judgment in appellee's behalf. Webster's New International Dictionary gives the following definition of proximate cause: "A cause which directly, or with no mediate agency, produces an effect; specif., Law, that which in ordinary natural sequence produces a specific result, no independent disturbing agencies intervening. The true rule is, that what is the *proximate cause* of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge.

It is to be determined as a fact, in view of the circumstances of fact attending it. * * * It is generally held, that in order to warrant a finding that * * * an act not amounting to wanton wrong is the *proximate cause* of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. Mil. & St. P. R. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256."

The case of T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, is presented and urged as authority against appellee's contention. The Bigham Case is easily distinguishable from the instant case. It had nothing to do with the injury that in this case was caused by a defective latch. In the Bigham Case the breaking of the gate did not of itself have any connection or causal relation with the plaintiff's injury—it merely let the cattle out, which "hauled him some twenty feet."

Here plaintiff was actually holding to the defective gate, and, when the latch broke, being itself defective, pulled the plaintiff down, and threw him under the foot of the steer, and dragged him in the path of the steer. This is not a case where animals escaped, but a case wherein there was a defect in the latch which caused the injury. In the Bigham Case the defective latch merely let the cattle escape, but here the defect in the gate itself pulled the plaintiff down and threw him under the feet of the steer. The direct causal connection between the defective latch and gate and the injury is apparent and definitely shown.

There are many decisions discussing proximate cause, which by this time should be well understood, but, like "blackeyed peas," no two alike, we rarely see proximate causes laid down in the books, but in which rhetorical and lengthy discussions are had that tend to make the subject more complex.

■ The appellee was lawfully upon the premises as an invitee.

We do not find any error assigned that should cause this judgment to be reversed, and all assignments are overruled, and the judgment is affirmed.