## BURLINGTON–ROCK ISLAND R. CO. v. GARLITZ et ux.

### No. 3879.

Court of Civil Appeals of Texas. Beaumont.
May 21, 1941.

Rehearing Denied June 4, 1941.

890

ber 10, 1939, by Charles F. Garlitz and his wife, Inez Garlitz, against the Burlington-Rock Island Railroad Company, seeking to recover damages for personal injuries alleged to have been sustained by Mrs. Garlitz on or about August 13, 1938, as a result of a fall she sustained when going into the dinette of one of defendant's passenger trains.

The defendant filed its plea of privilege seeking to have the cause transferred to Harris County, Texas, the county of its domicile. This was controverted by the plaintiffs, and the court, on January 25, 1941, overruled said plea of privilege, to which action of the court the defendant excepted, and brings this appeal.

The case was tried on an agreed statement of facts, which summarized are:

1. That Mrs. Garlitz suffered personal injuries on August 13, 1938, when she fell while on defendant's train, said accident occurring in Leon County, between the towns of Flynn and Normangee, and for the purpose of the plea of privilege, defendant agreed that her testimony would make out a prima facie case of negligence on the part of the defendant proximately causing her injuries.

2. The defendant is a Texas corporation, with its domicile and principal place of business in Houston, Harris County, Texas, and had its domicile and residence in Harris County, Texas, both at the time of the accident and at all times since.

3. The domicile of Mr. and Mrs. Garlitz at the time of the accident, at the time of filing the petition, and at the time of the hearing on the plea of privilege, was and is Liberty County, Texas.

4. The defendant did not and does not operate a line of railroad in Liberty County, nor has it an agent in Liberty County, but it does operate a line of railroad and have agents in both Montgomery County and Harris County, both of which counties adjoin Liberty County.

5. The place where the accident happened in Leon County is approximately 47 miles from Montgomery County, and the defendant's line of railroad passes through Madison County after leaving Leon County and before reaching Montgomery County, and after leaving Montgomery County it passes into Harris County.

6. The distance from the Liberty County courthouse to the Harris County courthouse was and is 43½ miles and the dis-

Luther Hudson, of Fort Worth, Foster & Williams, of Conroe, and Thompson & Barwise, of Fort Worth, for appellant.

Price Daniel and Bill Daniel, both of Liberty, and Pitts & Liles, of Conroe, for appellee.

O'QUINN, Justice.

This suit was filed in the district court of Montgomery County, Texas, Novem-

tance from the Liberty County courthouse to the Montgomery County courthouse is 57 miles, said measurements being by highway and over the usual and generally traveled routes between said points and/or over the nearest practical routes between said places.

7. The distance from the Liberty County courthouse to the Harris County line is fourteen miles; that the distance from the nearest Liberty County line to the Harris County courthouse is twenty-nine and one-half miles; that the distance from the nearest Liberty County line to the Montgomery County courthouse is twenty miles. Each of these measurements are by highway, and is over the usual and generally travelled routes between the points mentioned—over the nearest practical routes between said indicated points—and there is no shorter routes wholly by railroad between said points.

It was conceded at the hearing on the plea of privilege that the question of venue was governed by Section 25 of Article 1995, R.S.1925. Section 25 reads: "Railway personal injuries.—Suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in this State, for damages arising from personal injuries, resulting in death or otherwise, shall be brought either in the county in which the injury occurred, or in the county in which the plaintiff resided at the time of the injury. *If the defendant railroad corporation does not run or operate its railway in, or through, the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then said suit shall be brought either in the county in which the injury occurred, or in the county nearest that in in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent.* If the plaintiff is a nonresident of this State, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad, or have an agent. When an injury occurs within one-half mile from the boundary line dividing two counties, suit may be brought in either of said counties." (Italics ours.)

As shown by the agreed statement of facts above set out, the defendant did not operate a line of railroad in Liberty County, the county in which plaintiff resided at the time of the injury, nor did it maintain an agent in that county. Therefore the determination of the question of venue involved depends on the italicized portion of the article set out supra. Since it was agreed that the accident happened in Leon County, Texas, the question narrows down to whether Montgomery County is, within the meaning of the statute, the nearest county to Liberty County. Otherwise stated, the question is whether, under the provisions of the statute, the plaintiff may maintain his suit in any county adjoining the county in which he resides (Liberty) through which the defendant operates a line of railroad, or whether the statute designating the county in which suit may be filed which says "nearest county" means the nearest courthouse or nearest county seat to that of the county in which plaintiff resided at the time the suit was filed.

As shown by the agreed statement of facts, the defendant did not operate a line of railroad in Liberty County, the county in which plaintiffs resided, nor did it maintain an agent in that county. Therefore the determination of the question here involved depends upon interpretation or construction of that portion of section 25 of Article 1995, set out above, italicized. The accident happened in Leon County. The plaintiffs, at the time of the accident, and at the time of the filing of the suit, resided in Liberty County. Montgomery County and Harris County both adjoin Liberty County, and defendant operates a line of railway in each of said counties. The question is whether, under the provisions of the statute (Section 25, Article 1995), the plaintiffs could file their suit in any county adjoining the county in which they resided, through which the defendant operated a line of railroad, or whether the statute designating the county in which the suit could be filed which says "nearest county" means the county the court house of which is nearest the court house of the county in which plaintiffs resided at the time the suit was filed.

It is contended by appellant that the expression in the statute "in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent" means that county, the courthouse of which is nearest to the courthouse of the county in which the plaintiff resided at the time the suit was filed.

The plaintiffs, appellees, contend that where two counties through which the defendant operated a line of railroad adjoined the county in which plaintiffs resided at the time of the injury (as Montgomery and Harris counties), both of such counties were the nearest county, and that plaintiffs had the choice of filing suit in either of them.

So, it is seen, it is for us to determine which, Montgomery, the county in which the suit was filed, or Harris, within the meaning of the law, was the nearest county to Liberty County.

■ We think appellant's contention is sound and accept same as a correct interpretation of the law. Lawsuits must be begun by filing same at the courthouse. Trials of suits must be had at the courthouse. The courthouse is the place designated by law as the locus of litigation. Courthouses are maintained, chiefly, for this purpose. While the venue of a suit is in the proper county, still it must be at one particular place in the county—at the courthouse. This is all provided for and controlled by laws passed by the state legislature, always for the convenience of the people. For promoting justice, in both civil and criminal matters, the law provides for a change of venue upon a proper showing. From the beginning, in this state what is now Article 2172, R.S.1925 (with little change in wording), has designated the county to which a case shall be transferred when a change of venue is granted in civil matters. It reads: "If the application is granted, the cause shall be removed to an adjoining county, the court house of which is nearest the court house of the county in which the suit is pending, unless it appears in the application that such nearest county is subject to some objection sufficient to authorize a change of venue therefrom in the first instance; but the parties may, by consent, agree that it shall be changed to some other county, and the order of court shall conform to such agreement."

Likewise, what is now Article 565, Texas C.C.Proc.1925, has during our judicial history regulated and prescribed the county to which a criminal case shall be transferred when a change of venue is granted. It reads: "Upon the grant of a change of venue, the cause shall be removed to some adjoining county, the court house of which is nearest to the court house of the county where the prosecution is pending, unless it be made to appear to the satisfaction of the court that such nearest county is subject to some objection sufficient to authorize a change of venue in the first instance."

These two statutes regulating change of venue are general statutes designating the county to which venue shall be changed in civil and criminal cases. They have both at all times provided that the venue shall be transferred to the *county the court house of which is nearest to the court house of the county in which the suit, or prosecution is pending*. No matter what was in the mind of the legislature when it enacted the statutes, they are certain, and sensible, and have continued to express the policy of the law. While it is true Section 25 of Article 1995, set out supra, does not include the expression "the court house of which is nearest the court house of the county in which the suit is pending," literally, yet we think when considered in connection with the intent and public policy established by the legislature in the enactment of the general statutes, Article 2172, R.S.1925, and Article 565, C.C.Proc. 1925, prescribing the counties to which causes should be transferred when a change of venue was granted, the uncertainty, if it be such, in Section 25 disappears and the provision as there set out becomes clear and certain in accord with the long established rule as announced by said articles. For more than a half century these statutes have been the rule, and certainly if such was not the established intent and policy of the law, some change would have been made directly in plain language modifying them.

■ Since we have determined that the change of venue granted by the trial court should have been to the adjoining county, the courthouse of which was nearest to the courthouse of the county in which the suit was pending, then from the agreed statement of facts, we find that the distance from the Liberty County courthouse to the Harris County courthouse is 43½ miles, and the distance from the Liberty County courthouse to the Montgomery County courthouse is 57 miles; these measurements being by highway and over the usual and generally traveled routes between said points and over the nearest practical routes between said places. It thus appears that the courthouse of Harris County is 13½ miles nearer to the courthouse of Liberty County than the

Montgomery County courthouse, and, under the law, the suit should have been transferred to Harris County, the nearest county to Liberty County for venue purposes.

■■ But appellees insist that the distance from the Liberty County *courthouse* to the Harris *County line* is 14 miles; while the distance from the nearest Liberty *County line* to the Harris *County courthouse* is 29½ miles; and the distance from the nearest Liberty County line to the Montgomery County courthouse was 20 miles, and so Montgomery County was the nearest county to Liberty County, and the suit was properly brought in said county. We cannot agree to this contention. As shown, Section 25 of Article 1995 merely says that if the defendant railroad does not operate its railway in or through the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then the suit shall be brought either in the county in which the injury occurred, or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant runs or operates its road, or has an agent. It is admitted that the defendant railroad did not operate its line of railroad in Liberty County, nor did it have an agent in said county. Also it is admitted that both Harris County and Montgomery County adjoined Liberty County, and that the defendant operated its railroad in each of said counties, and that being so appellees contend that both counties were nearest counties to Liberty County, and that they had their choice of said counties in which to file their suit, and so the suit was properly filed in Montgomery County. We cannot agree to this contention. It is a matter of common knowledge that many counties in Texas have more than two adjoining counties, and if each of such adjoining counties thus became the "nearest county" to the county in question, then much confusion and controversy would arise as to the venue of a suit, such as here, to be filed in one of them as to which in fact was the nearest county. In such case we think the statute should be construed in the light of the general statutes, Article 2172, R.S.Civil Statutes, 1925, and Article 565, Texas C.C.Proc.1925, which specifically provide that the nearest county means the county the courthouse of which is nearest to the courthouse of the county in which the suit or prosecution is pending.

Furthermore, the legislature in passing Section 25 of Article 1995 was dealing with suits which would be filed and tried, not at the county line of a county, but at the courthouse at the county seat of the county. If the phrase "nearest county" does not mean that county the courthouse of which is nearest to the courthouse of the county in which the suit is pending, then there is no test which would certainly designate the county to which the venue should be transferred. Obviously the legislature had in mind that there could and would be many adjacent counties through which a line of railroad ran, and if the legislature, in enacting the statute, meant that the plaintiff was entitled to and could file his suit in any adjoining county through which the defendant operated its road, it would have said so.

We have been unable to find any decision of this state construing the words "county nearest that in which the plaintiff resided at the time of the injury" in the statute, Section 25, Article 1995—the venue statute. But the Supreme Court of Tennessee, in construing a statute of similar import, passed upon the identical question— "the nearest county"—and construed the "nearest county," to be the county whose county seat was nearest. We quote from the opinion in Coover v. Davenport, 1 Heisk. 368, 48 Tenn. 368–383, 384, 2 Am. Rep. 706: "This raises the question: 'Was Marion county the nearest county to Franklin, and how was the judge to determine the fact? The Judge could take judicial notice of the local divisions of the State into counties, cities, towns, and the like, and of the relative positions of such local divisions. 1 Greenl., § 6. He was bound, therefore, to know, judicially, that Coffee, Lincoln and Grundy counties, in the same circuit, and Bedford and Marion counties, not in the same circuit, were all adjoining counties to Franklin. The law required him to send the cause to the nearest of these five counties. What is meant in the statute by the nearest county? In one sense, none of them are nearest, as all are adjoining to Franklin. We must interpret the language so as to carry out the object of the Legislature. The object most clearly was to require the Judge to accommodate his action to the convenience of the parties and witnesses in the cause. This was to be done by sending the cause to the nearest county, *meaning that county whose Court House was nearest to that*

*of Franklin county.* He knew, judicially, or ought to have known, that the Court House of Marion county, instead of being the nearest, was the most. distant of the five adjoining counties; and for that reason, as well as on account of the character of the county, the most inconvenient for parties and witnesses. It was, therefore, error to transfer the cause, for trial, to Marion county." (Italics ours.)

The reasoning in the cited case is clear and convincing, and the rules of construction annouced sound and applicable here. The judgment is reversed and the cause remanded to the trial court with instructions to sustain the plea of privilege and transfer the cause to Harris County for trial on its merits, and it is so ordered.